MOORE, Judge.
Deborah Lynn Weeks (“the wife”) appeals from a judgment entered by the Marion Circuit Court (“the trial court”) divorcing her and Michael Roy Weeks (“the husband”) and dividing the parties’ property. We affirm.

Procedural History

On August 8, 2007, the wife filed a complaint requesting a divorce from the husband. The husband answered the complaint on August 22, 2007. After a trial, the trial court entered a judgment on October 16, 2007, awarding the wife $20,000 as alimony in gross, a 1999 Chrysler automobile, and certain other items of personal property. The trial court awarded the husband his retirement accounts, the parties’ real property, the parties’ bank accounts, a truck, and all personal property not specifically awarded to the wife. The trial court ordered the husband to pay the debt associated with the real property and the parties’ credit-card debt. On November 15, 2007, the wife filed a motion to alter, amend, or vacate the divorce judgment or, in the alternative, for a new trial. After a hearing, the trial court amended the judgment to require the husband to pay the wife $350 per month in alimony for a period of 10 years. The wife filed her notice of appeal to this court on February 22, 2008.

Issue

On appeal, the wife argues that the trial court exceeded its discretion in its division of property because, she says, the division of property is inequitable.

*529
Standard of Review

Because the trial court heard oral testimony on this issue, the ore tenus rule is applicable.
“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ Philpot v. State, 843 So.2d 122, 125 (Ala.2002). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)).”
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005).
“[T]he ore tenus rule affords a correct and necessary deference to the trial court’s factual findings, recognizing that an appellate court sees only a written record and does not observe the appearance, behavior, and demeanor of live witnesses. The ore tenus rule simultaneously requires the appellate court to review the trial court’s judgment to determine if it is supported by the appropriate level of evidence. The rule thus preserves the safeguards of the standard of proof that was utilized by the trial court without improperly usurping the trial court’s role as fact-finder.”
J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1185-86 (Ala.Civ.App.2007). Additionally, “[a] property division made by a trial court will not be set aside on appeal absent a palpable abuse of its discretion.” TenEyck v. TenEyck, 885 So.2d 146, 154 (Ala.Civ.App.2003).
“The purpose of the division of marital property is to give ‘each spouse the value of [his or her] interest in the marriage. Each spouse has a right, even a property right in this.’ ” Lo Porto v. Lo Porto, 717 So.2d 418, 421 (Ala.Civ.App.1998) (quoting Pattillo v. Pattillo, 414 So.2d 915, 917 (Ala.1982)).
“On appeal, the issues of alimony and property division must be considered together. The trial court’s judgment on those issues will not be reversed absent a finding that the judgment is so unsupported by the evidence as to amount to an abuse of discretion. [Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993).] The property division need not be equal, but it must be equitable. Id. The factors the trial court should consider in dividing the marital property include ‘the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party’s potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property.’ Covington v. Covington, 675 So.2d 436, 438 (Ala.Civ.App.1996).”
Courtright v. Courtright, 757 So.2d 453, 456 (Ala.Civ.App.2000).

Facts

The parties were married on August 4, 1995. The wife testified that, approximately one week before the parties married, she had filed a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court. At the time of the marriage, the wife was employed and owned a house, an automobile, her furniture, and personal items; the husband was employed and owned a house, $500 in a checking account, and an automobile valued at approximately $2,200. Upon the marriage, the wife quit her job, sold her house, netting $3,000, and sold her refrigerator for $500, and she and *530 her younger child moved into the husband’s house.
After moving in with the husband, the wife worked only for a brief time, earning a total of $978.85. The wife testified that she became disabled in 1996, that she had received a lump-sum Social Security disability payment of $15,624.20 in 1998, and that she had since received a monthly Social Security disability benefit, which was $740 at the time of the trial. The wife testified that she takes prescription medication for pain and several other prescription medications for various conditions. During the marriage, the husband worked as a miner about 60 hours per week and earned approximately $60,000 to $70,000 annually. The husband worked until January 2006, when he suffered an on-the-job injury to his neck and lower back. At the time of the trial, the husband was receiving $629 weekly in workers’ compensation benefits for temporary total disability. See Ala.Code 1975, § 25-5-57(a)(l).
The husband testified that the wife’s monthly Social Security disability benefits had always been deposited into the wife’s separate bank account. The wife testified that she had used that money to purchase clothing for herself, the husband, and her younger child. She testified that she had also used that money to get her hair done, to pay her medical co-pays, to pay for her younger child’s automobile insurance, and to help her younger child pay his rent when he was enrolled in college. She also testified that she had purchased items for the house and had purchased groceries “every now and then.” The wife further testified that she had used her lump-sum Social Security disability payment to pay off the debt owed on an automobile that the husband had owned. The husband testified that the wife had used the money in her account for her personal items, for gifts, and to help her children. He also testified that he had paid all the parties’ bills and had also paid for some of the wife’s personal expenses. The husband testified that he had also contributed financially to the wife’s younger child’s well-being. The husband testified that when the wife’s younger child turned 16, he had purchased a car for the child and had paid the child’s automobile insurance. The husband testified that the wife had, without the husband’s knowledge, allowed her older child to use the husband’s credit card to purchase appliances. The evidence indicated that the wife’s older child had written the husband a check to pay the balance due on the credit card.
The wife testified that, after living in the husband’s house for some time, the parties decided to build a new house; the husband sold his house and purchased a house along with 19.75 acres of land (“the real property”). The wife testified that the husband had paid a portion of the purchase price of the real property with $15,268.92 that he had netted from the sale of his house and with money that he had borrowed from his father and that he had financed the remainder of the purchase price. The wife testified that the husband had made all the mortgage payments on the real property and had also made extra payments toward the mortgage throughout the marriage. At the time of the trial, the parties owed $42,362.79 on the mortgage. The most recent tax appraisal valued the real property at $164,425. The husband valued the real property at approximately $165,000. The wife, however, valued the real property at $229,000. The husband testified that he had told a real-estate agent that he would sell the real property if he could get $230,000 but that no such offer had been made.
In October 2002, the parties borrowed money on a home-equity line of credit to pay for a Chrysler automobile. In May *531 2007, the wife borrowed $3,000 from the parties’ home-equity line of credit. The husband testified that he had made all the payments on the line of credit. The balance on the home-equity line of credit was $11,652.32 at the time of the trial.
The wife testified that the parties own a 1999 Chrysler automobile and a 1994 truck. She testified that the husband had told her the Chrysler was worth $6,000; she testified that the truck is worth about $4,000. She testified that the parties own a tractor and a lawnmower, which the husband had told her were worth $5,500 and $1,300, respectively. She also testified that the husband had told her they had $11,561 in a savings account and $2,000 in a checking account. The husband also owned a boat that he had prior to the parties’ marriage. The wife testified that she has $200 in her own savings account.
The wife’s jewelry had an appraised value of $12,987.05. The wife testified that she had had some of the jewelry before the parties’ marriage and that the jewelry that she had acquired during the marriage had been gifts. She also testified that the husband had told her that the pieces of jewelry he had given her were not gifts but, instead, were investments. The wife testified that she believed the personal property awarded to the husband was worth approximately $6,000.
The wife introduced the testimony of a certified public accountant. The accountant testified that he had calculated the present value of the husband’s United Mine Workers of America pension to be $125,563. On cross-examination, however, the accountant admitted that he had calculated the value based on the husband’s entire employment period, not just the portion of the husband’s employment during the parties’ marriage. The calculation also included the time that the husband had been disabled and unable to work. The husband’s younger son, who is a civil engineer, testified that the present value of the husband’s pension, taking into consideration only the husband’s employment during the parties’ marriage, was $43,847. The wife testified that the husband had told her that his separate 401k retirement account was valued at $29,000.
After the birth of her grandchild in 2007, the wife made two trips to Florida to assist with caring for the baby. During the wife’s second trip to Florida, the husband went to Florida to pick up the wife and an argument ensued. The husband testified that the wife had subsequently telephoned him on August 1, 2007, and told him that she wanted a divorce. The wife testified that the husband had threatened to harm her; the husband denied making any threats. The husband testified that, although he had helped the wife throughout her years of disability, the wife had tried to get her mother to stay with the husband at the hospital during the surgery for his work-related injuries, instead of having to accompany him herself. The husband testified that, during the last year of the parties’ marriage, all the wife had done was lie around the house in her pajamas and go out on the porch to smoke. The wife testified that she planned on moving to Florida after the divorce.

Analysis

The trial court awarded the wife the personal items she had requested, $20,000 as alimony in gross, a car worth $6,000, and $350 per month in periodic alimony for 10 years. The trial court awarded the husband the real property, which has a net value of $110,409.89 (using the tax-appraised value of the property); both of his retirement accounts, valued at $72,847 (including only the present value of the pension account accumulated during the parties’ marriage), see Ala.Code 1975, *532 § 30-2-51(b); the parties’ bank accounts, valued at $13,761; a truck, valued at $4,000; and various items of personal property valued at $15,500. Our calculations reveal that the marital property awarded to the husband has a net value of $196,517.89, or approximately 88.3% of the marital estate, and that the marital property awarded to the wife has a value of $26,000, or approximately 11.7% of the marital estate.[1]
We acknowledge that this court has reversed judgments effectuating such a disproportionate division of property. See, e.g., Mullis v. Mullis, 994 So.2d 934, 940 (Ala.Civ.App.2007); Cunningham v. Cunningham, 964 So.2d 678 (Ala.Civ.App.2007); Kaufman v. Kaufman, 934 So.2d 1073 (Ala.Civ.App.2005); and Adams v. Adams, 778 So.2d 825 (Ala.Civ.App.2000). However, “there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.” Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004). “Even if a property division favors one party over the other, that is not, in and of itself, an abuse of discretion.” Jordan v. Jordan, 547 So.2d 574, 576 (Ala.Civ.App.1989). Instead, the trial court must consider many factors, including those set forth in Courtright, supra, in determining whether the division of property is equitable under the particular circumstances of the case. Jordan, 547 So.2d at 576; and TenEyck, 885 So.2d at 154.
We find it notable that, in the present case, substantial evidence indicates that the wife made only an insignificant economic contribution to the marriage. The wife used her income primarily as her separate money throughout the marriage, using that money mostly to pay for her personal expenses and for the personal expenses of her children from a previous relationship. The evidence indicates that all the parties’ major assets had been accumulated as a result of the husband’s working long hours as a miner. It was undisputed that the husband had made all the payments relating to the real property, including making the payments on the home-equity line of credit, which had been used to purchase the Chrysler automobile. The husband also testified that he had paid the household bills and had paid some of the wife’s personal expenses and some of the expenses of her younger child from a previous relationship. On the other hand, even before the wife became disabled, she had worked only sporadically.
Further, there is no evidence to indicate that the wife made any significant noneco-nomic contribution to the parties’ marriage. In fact, the evidence indicated that the wife attempted to shift the responsibility for caring for the husband during his injury to her mother. Further, the husband testified that, during the last year of the parties’ marriage, all the wife did was lie around the house in her pajamas and go onto the porch to smoke.
Despite the lack of any significant contribution to the acquisition of the marital property, the wife leaves the marriage with property of a value far greater than the property she owned upon entering the marriage. Although neither party will be able to maintain their former standard of living because they are now both disabled, the wife presented no evidence indicating *533 that she will be unable to meet her financial needs with the property and alimony she was awarded. Based on the foregoing, we conclude that the trial court did not exceed its discretion in determining the “ ‘value of [the wife’s] interest in the marriage.’ ” Lo Porto, 717 So.2d at 421 (quoting Pattillo, 414 So.2d at 917) (emphasis omitted). Thus, we affirm the trial court’s judgment.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. In her brief to this court, the wife does not include the value of her jewelry in her determination of the value of the assets she was awarded. She asserts that her jewelry is not marital property, either because it was owned by her before the marriage or because it was given to her as gifts by the husband during the marriage. For purposes of our calculations, we assume, without deciding, that the jewelry was the wife's separate property, and we do not include the jewelry as a marital asset in our analysis.