On Application for Rehearing

BRYAN, Judge.[1]
This court’s opinion of May 18, 2012, is withdrawn, and the following is substituted therefor.
E.A.B. (“the wife”) appeals from a judgment divorcing her from D.G.W., Jr. (“the husband”), and the husband cross-appeals. We affirm.
The parties married in June 1990 and separated in July 2008. When the action was tried in November 2010, the wife was 44 years old, and the husband was 50. The parties had a daughter in 1994 and a son in 1996. When the action was tried, the daughter was a junior at a private boarding school, and the son was a freshman in the local public-school system.[2]
The husband is an attorney in private practice with a law firm (“the law firm”). He owns an interest in the law firm and has personally guaranteed debt owed by the law firm. In addition, he owns an interest in a partnership (“the partnership”) that owns real property used by the law firm. His adjusted gross income was $869,342 in 2007, $1,276,794 in 2008, and $1,368,623 in 2009. From January 1, 2010, through mid-November 2010, when the action was tried, the husband had received gross draws from the law firm totaling $768,332.07.
The wife graduated from Birmingham Southern College and earned a paralegal certificate from Spring Hill College. She worked full time as a paralegal for a short period before the parties’ daughter was born in 1994. When the daughter was born, the wife stopped working to care for the daughter, and she did not work outside the home again until the children entered school; at that point, she began working as a substitute teacher at their school. In the spring of 2008, she began working part time at a store (“the bookstore”) that sells books and other miscellaneous merchan *426 dise. She was still working part time at the bookstore for $7.50 per hour when this action was tried. Her income from the bookstore in 2009 totaled $12,714.59, and her anticipated income from the bookstore for 2010 was approximately $12,000. Throughout the marriage, the wife participated in volunteer organizations. She served as president of the parent-teacher organization at her children’s school and participated in the activities of the local youth-baseball league, the local literacy council, the local United Way, a local choral society, and a local branch of the Junior Auxiliary.
The wife testified that the marriage had irretrievably broken down when the husband informed her in October 2009 that he had begun dating another woman.
The husband, on the other hand, testified as follows regarding the breakdown of the marriage. The problems in the marriage had begun shortly after the parties’ son was born in 1996 as a result of the wife’s behavior changing. The wife exhibited a cold attitude toward the parties’ daughter, stopped keeping the house orderly, stopped cooking on a regular basis and did not cook nutritious meals when she did cook, stopped exercising, and allowed her weight to increase a great deal. Those problems became progressively worse. He told the wife that he thought she might be suffering from depression; however, she did not seek professional help. In 2002, he took the wife to Hawaii and discussed the problems he was having with her; however, he saw no improvement after they returned from Hawaii. The husband asked the wife to prepare the interior of their house for Hurricane Ivan in 2004 and for Hurricane Katrina in 2005 so that he could devote his time and attention to preparing the exterior; however, the wife ignored his requests. Their house was flooded by Hurricane Katrina, and their personal property suffered damage from the flooding that could have been avoided if the wife had prepared the interi- or of the house for the hurricane as he had requested. In 2006, the parties ceased having intimate relations and began sleeping apart. In 2007, he saw the wife physically shove the daughter, which he considered unacceptable behavior by a parent. Thereafter, he arranged for family counseling with a therapist; however, he saw no improvement in the wife’s behavior after a year of counseling. In April 2008, the wife legally changed her last name to her maiden name without telling him. In the spring of 2008, the husband suggested to the wife that they separate, and he suggested that she find a house to live in near the family residence. The wife found a house she liked (“the wife’s new house”) that was near the family residence. The husband paid a down payment of $47,000 for the wife’s new house and financed the balance of the purchase price. He gave the wife her choice of the furniture in the family residence and paid for approximately $6,000 of additional furniture she picked cut at a furniture store. In July 2008, the wife moved into the her new house. The children remained with the husband in the family residence. He had hoped that the separation would be temporary and that they could work out their differences; however, the wife’s comments became “very nasty” and their relationship became worse instead of better. Consequently, he came to the conclusion that there was no way to improve the relationship and that there was no hope of continuing the marriage. The parties attempted to reach an agreement regarding the terms of a divorce and participated in a mediation in April 2009; however, the attempts to reach an agreement were unsuccessful. On August 15, 2009, he met a woman, and they began dating. A romantic and sexual relationship developed, and, in October 2009, *427 he told the wife that he was dating. Subsequent to August 15, 2009, he took the other woman on trips and bought her gifts, including a “promise ring” that cost $5,313.75. His relationship with the other woman was ongoing when the action was tried.
On January 15, 2010, the husband sued the wife for a divorce on the ground of incompatibility, and the wife subsequently counterclaimed for a divorce on the grounds of incompatibility and adultery. The trial court received evidence ore tenus at a bench trial on November 2, 3, 16, and 18, 2010. On November 24, 2010, the trial court sent the parties’ attorneys an e-mail accompanied by a draft of the judgment. The e-mail, which was made an exhibit of the court during a March 1, 2011, hearing on the parties’ postjudgment motions, stated, in pertinent part:
“I want to tell you a little about my reasoning in this case. First, I believe it is very clear from the evidence that this marriage was irretrievably broken in 2008. The [husband’s] relationship with [the other woman] started long after that time, and I believe it did not in any way contribute to the breakdown of this marriage. Therefore, I did not give that any weight in making my ultimate decision.
“Additionally, I allocated no value in my calculations to [the husband’s] interest in the law firm or the firm’s building partnership, outside of what it allows him to produce in income. His contingent liability on the firm’s line of credit exceeds his member’s equity, and further, although his interest may be shown as $611 [thousand] on paper, I don’t view that as a tangible or marketable asset from which [the wife] should be awarded an interest.
“I imputed income to [the wife] at $40,000, as I believe that is a fair salary for a legal assistant or paralegal with her education and leadership skills. I calculated alimony and child support based on this. Certainly she may decide to continue to work part time as a book seller, but she must make the choice then to reduce her lifestyle accordingly. Also, from the perspective of alimony, I took into account the tax consequences when I calculated what I believe to be a fair amount.”
The trial court entered a divorce judgment on December 2, 2010. The judgment did not state a ground for the divorce. As subsequently amended, the judgment awarded the husband the following marital assets for which the record indicates a value:

Asset Net Value

family residence $ 319,000
Highway 181 property 3,000
Point Clear property 141,000
County Road 24 property 35,000
pick-up truck 4,400
Mustang 15,000
Land Rover 18,000
Suburban 5,000
Boston Whaler boat 5,000
Kubota tractor 24,000
Ford tractor 24,000
Caterpillar’ tractor 37,000
1933 Ford 32,000
antique race cars 6,250
golf cart 2,500
3 motorcycles 1,700
interests in law firm and partnership 611,667
1/2 of husband’s 401(k) 331,000
cash 365,000
Total net value $1,980,517
The judgment ordered the husband to pay the mortgage on the wife’s new house, which the trial court awarded to the wife. The balance owed on that mortgage was $177,362. Subtracting that $177,362 from the total net value of the assets listed above reduces the net value of the husband’s share of the assets for which the record indicates a value to $1,803,155 *428 ($1,980,517 minus $177,362 equals $1,808,155).
In addition, the judgment awarded the husband the following marital assets for which the record does not indicate a value: his personal effects and heirlooms; a canoe; art work; antique furniture; three trailers; race-car tires; a coin collection; and all furniture, furnishings, tools, and lawn-care equipment located at the family residence.
As subsequently amended, the judgment awarded the wife the following marital assets for which the record indicates a value:

Asset Net Value

wife’s new house $200,000
Land Cruiser 7,500
race cars 1,250
1/2 of husband’s 401(k) 331,000
cash 50,000
Total net value $589,750
In addition, the judgment awarded the wife the following marital assets for which the record does not indicate a value: her jewelry, personal effects, and heirlooms; portraits of the children; a collection of bride’s baskets; Christmas decorations of her choosing; all silver in the Gorham Camellia pattern; a big conch shell; and the furniture, furnishings, tools, and lawn-care equipment located at the wife’s new house.
The judgment also awarded the husband interests in several business entities that own real property for investment purposes, which the wife conceded were contingent assets (“the contingent assets”).
In addition, the judgment ordered the husband to pay the wife $5,000 per month in permanent periodic alimony; incorporated the parties’ agreement regarding custody; imputed income of $40,000 to the wife; ordered the wife to pay $500 per month in child support; and ordered that each party would be responsible for paying his or her own attorney fees.
On December 22, 2010, the wife filed a postjudgment motion. Among other things, the wife asserted that the trial court had erred in failing to grant the divorce on the ground of adultery, in dividing the marital property, in imputing $40,000 of income to the wife, in considering the husband’s contingent liability for debts of the law firm in determining the value of the husband’s interest in the law firm and the partnership, and in failing to order the husband to pay the wife’s attorney fees. On December 28, 2010, the husband filed a postjudgment motion in which he asserted, among other things, that he had learned after the trial that the wife had contracted to buy a local business, that the wife had intentionally failed to disclose that she had done so when she testified at trial, and that the division of marital property and the award of periodic alimony should be altered to reflect the wife’s new business as a source of income.
The trial court heard the parties’ post-judgment motions on March 1, 2011. At that hearing, the trial court received ore tenus testimony from the wife regarding her purchase of the local business. On March 21, 2011, the trial court entered an order that granted the wife’s postjudgment motion in part by making some relatively minor adjustments in the division of marital property that favored the wife but otherwise denied the wife’s postjudgment motion. Rejecting the wife’s assertion that it had erred in considering the husband’s contingent liability for debt of the law firm in determining the value of the husband’s interest in the law firm and the partnership, the trial court stated:
“d. The Court determined the value of the parties’ marital estate without consideration of the contingent assets and liabilities of the parties, and made its division accordingly. The Court then *429 considered and valued the contingent assets and liabilities separately. In reviewing said distribution, the Court reaffirms its previous judgment as to the division of those assets and debts.”
Also on March 21, 2011, the trial court entered a separate order ruling on the husband’s postjudgment motion. The trial court granted that motion with respect to an issue that is not material to this appeal but denied it insofar as it sought a reduction of the wife’s share of the marital property and the award of periodic alimony, stating:
“2. Although the Court agrees that the Defendant Wife’s pending purchase of a business at the time of trial was a material omission on the part of the Wife at trial, the income from that business at this time is too speculative for the Court to consider a modification of the prior order. The Court imputed a fair income to the Wife in the calculation of alimony, and that order shall stand.”
The wife timely appealed to this court on April 29, 2011, and the husband timely cross-appealed on May 13, 2011.
Because the trial court received evidence ore tenus, our review is governed by the following principles:
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in ton Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). “‘The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
In her appeal, the wife first argues that the trial court erred in failing to specify a ground for the divorce.
“Although it is the better practice to set out the grounds [upon which the divorce is granted] in its decree, a trial court will not be reversed for its failure to do so. Cozad v. Cozad, 372 So.2d 1322 (Ala.Civ.App.1979). Where the decree fails to contain grounds for the divorce, this court will examine the record to see if there is sufficient evidence to support the ground or grounds propounded by the parties and if so the decree will be affirmed. Cozad, supra.”
Mathieson v. Mathieson, 409 So.2d 439, 442 (Ala.Civ.App.1982).
In the present case, the parties both sought a divorce on the ground of incompatibility, while the wife sought a divorce on the additional ground of adultery. The husband’s testimony supports a divorce on the ground of incompatibility. Therefore, the trial court’s failure to specify a ground for the divorce does not constitute reversible error. Id.
The wife also argues that the trial court erred because, the wife says, the trial court did not specifically grant a divorce on the ground that the husband had committed adultery. In Roberts v. Roberts, 357 So.2d 150 (Ala.Civ.App.1977), the husband sued the wife for a divorce on the *430 ground of incompatibility, and the wife counterclaimed for a divorce on the ground of adultery. 357 So.2d at 151. The trial court entered a judgment granting a divorce without stating a ground for the divorce. Id. The wife appealed to this court, arguing, among other things, that “there was error in failing to grant the divorce on the ground of adultery.” Id. Rejecting that argument, this court stated:
“This court said in the case of Russell v. Russell, 45 Ala.App. 255, 257, 229 So.2d 30, 32 (1969) and repeated in the case of Lloyd v. Lloyd, 46 Ala.App. 441, 442, 243 So.2d 525, 527 (1970), ‘(I)f the evidence is legally sufficient to support the decree of the court below as to any ground alleged in the Bill of Complaint, the decree must be affirmed.’ We find the evidence and its reasonable inferences sufficient to support a divorce on either the ground of incompatibility or adultery. The failure to state which ground is therefore not reversible error.”
Id. at 151-52.
As noted above, the husband’s testimony in the present case supports a divorce on the ground of incompatibility. Therefore, the trial court’s failure to specify adultery as the ground for the divorce did not constitute reversible error. Id.
The wife also argues that the trial court erred in considering the husband’s contingent liability for debt of the law firm in determining the value of the husband’s interest in the law firm and the partnership for purposes of dividing the marital property. Specifically, the wife argues that the trial court’s e-mail indicates that the trial court erroneously found that the husband’s interest in the law firm and the partnership had no value for purposes of the property division because their value was offset by the husband’s contingent liability for debt of the law firm.
This court has held that, in valuing marital property, “contingent assets and contingent liabilities [are] not to be included in the computation of the parties’ net worth but should be calculated separately and awarded separately” and that the trial court “should ... determine[ ] the value of the parties’ marital estate without reference to their contingent assets and liabilities; after determining the net worth of the parties in that fashion, the trial court then should ... consider[ ] their contingent assets and liabilities separately.” Grelier v. Grelier, 63 So.3d 668, 673-74 (Ala.Civ.App.2010). The trial court’s email indicates that the trial court initially considered the husband’s contingent liability for the law firm’s debt in determining the value of his interests in the law firm and the partnership, which was error. Id. However, the trial court’s order ruling on the wife’s postjudgment motion indicates that the trial court subsequently corrected its error by valuing the husband’s interests in the law firm and the partnership as part of the marital estate without considering the husband’s contingent liability for debt of the law firm and then considered the husband’s contingent liability for debt of the law firm in valuing the contingent assets.[3] Although the trial court did not change its division of the marital property as a result of its subsequent valuation of the husband’s interests in the law firm and the partnership without considering the husband’s contingent liability for debt of *431 the law firm, its failure to change the division of marital property would constitute reversible error only if it resulted in an inequitable division of the marital property. Cf. Grelier v. Grelier, 63 So.3d at 672 (holding that, when the trial court’s judgment on remand stated that it had considered the value of the husband’s business interests without applying any marketability or minority discounts to that value as this court had instructed it to do and that it had found it to be equitable to divide the marital property as it had before, the trial court had not erroneously failed to comply with this court’s mandate).
The wife also argues that the trial court’s division of the marital property and award of periodic alimony were inequitable.
“[T]he division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O’Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996).
“When dividing marital property and determining a party’s need for alimony, a trial court should consider several factors, including ‘ “the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.” ’ Ex parte Elliott, 782 So.2d 308 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or where, as here, the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998). It is well-settled that where a trial court does not make specific factual findings, the appellate court must assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Ex parte Fann, 810 So.2d 631 (Ala.2001); Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996).”
Baggett v. Baggett, 855 So.2d 556, 559-60 (Ala.Civ.App.2003). In addition to the factors listed in Baggett v. Baggett, the trial court may also consider the spouses’ relative economic and noneconomic contributions to the marriage in dividing the marital property and awarding periodic alimony. Weeks v. Weeks, 27 So.3d 526, 532-33 (Ala.Civ.App.2008).
“ ‘[T]here is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.’ Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004). ‘Even if a property division favors one party over the other, that is not, in and of itself, an abuse of discretion.’ Jordan v. Jordan, 547 So.2d 574, 576 (Ala.Civ.App.1989).”
Id. at 532.
In the present case, the marital assets for which the record indicates a value have a total net value of $2,392,905. The trial court awarded the husband $1,803,155 of that total net value and awarded the wife $589,750 of it. Thus, the trial court awarded the husband approxi *432 mately 75% of the total net value of the marital assets for which the record indicates a value and awarded the wife approximately 25% of it. In addition, the trial court awarded the wife $5,000 per month in permanent periodic alimony. When the action was tried, the husband was 50 years old, and the wife was 44. The marriage lasted approximately 20 years. The husband was in good health. The wife was being treated for depression but was otherwise in good health. The husband’s future employment prospects and ability to earn are substantially greater than the wife’s. The husband and the wife enjoyed an affluent standard of living during the marriage. The husband’s economic contributions to the marriage far exceeded the wife’s and virtually all the marital assets were acquired with money he earned. The evidence would support a finding that the husband’s noneconomic contributions to the marriage also far exceeded the wife’s; the evidence would support findings that he became the primary caregiver for the parties’ children and that he made greater contributions toward salvaging the marriage than did the wife. The husband arranged for marital counseling and sponsored that effort at salvaging the marriage for over a year. Although the husband committed adultery, the trial court found that the marriage had already irretrievably broken down before the adultery began in August or September of 2009, which was over a year after the parties had separated and after the parties had attempted to agree upon the terms of a divorce. Moreover, the evidence would support a finding that the wife was primarily responsible for the failure of the marriage due to her negative attitude toward the daughter and her failure to modify her behavior despite the husband’s requests and the family counseling he arranged and sponsored. Taking into consideration all the evidence that was before the trial court, we conclude that the trial court’s division of marital property and award of periodic alimony is equitable.
The wife also argues that the trial court erred in imputing income of $40,000 per year to her. However, the evidence indicates that, despite the fact that the husband had primary physical custody of the children after the wife moved into her new house in July 2008, the wife made no effort to find a full-time job. The evidence would support a finding that, given her education and abilities, she was underemployed and that she could earn considerably more than the $7.50 per hour she earned as a part-time employee of the bookstore. Rule 32(B)(5), Ala. R. Jud. Admin., provides that, “[i]f the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income....” (Emphasis added.) Accordingly, we conclude that the trial court did not err in imputing income of $40,000 per year to the wife.
The wife’s final argument is that the trial court exceeded its discretion in failing to order the husband to pay her attorney fees.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the *433 attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
The husband’s financial circumstances are more favorable than the wife’s. However, the evidence would support a finding that the wife’s conduct was the primary cause of the breakdown of the marriage, and the husband prevailed on most of the disputed issues in the action. Accordingly, we conclude that the trial court did not exceed its discretion in ordering each party to be responsible for his or her own attorney fees.
In his cross-appeal, the husband argues that the trial court erred in declining to reduce the wife’s share of the marital property and her award of periodic alimony due to the wife’s concealing the fact that she had contracted to buy a local business. However, we agree with the trial court’s finding that the effect of the business on the wife’s financial condition was too speculative to warrant changing the division of marital property and the award of periodic alimony. Therefore, we affirm the trial court’s ruling with respect to that issue.
The wife’s motion for an attorney fee on appeal is denied.
APPLICATION OVERRULED; OPINION OF MAY 18, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., recuses himself.

. Due to delays by the court reporters in preparing the transcripts of the trial of this action, this appeal was not assigned to this judge until more than 290 days after the filing of the notice of appeal.

. During trial, the parties reached an agreement regarding custody of the children. They agreed that they would have joint legal custody, that the husband would have primary physical custody, and that the wife would have visitation. Consequently, custody is not an issue on appeal.

. The wife has not argued on appeal that the trial court erred in awarding the husband the contingent assets or that the award of the contingent assets to the husband rendered the trial court’s division of the marital property and award of periodic alimony inequitable. Therefore, she has waived those issues. See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").