Rel: July 12, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

### CL-2023-0887

_____

### David DeJean, Sr.

### v.

### Pamela DeJean

### Appeal from Baldwin Circuit Court
### (DR-22-900781)

EDWARDS, Judge.

David DeJean, Sr. ("the husband"), appeals from a judgment entered by the Baldwin Circuit Court ("the trial court") in a divorce action between him and Pamela DeJean ("the wife"). He argues that the trial

court erred regarding the division of the marital property and the award of custody of the parties' children to the wife.

The parties married in April 2005. They have three sons ("the children"), who were born in January 2006, June 2009, and September 2011 and who attend Gulf Shores city schools. When the parties married, the husband was in the military. He was injured while serving the military in Iraq in 2007, when a building that he was in collapsed. He suffered a traumatic-brain injury, a severed ulnar nerve in his left arm, and a back injury, from which he developed degenerative disc disease. The husband continued to serve in the military and was "medically retired" in 2013. After his retirement, he worked as a teacher in a few Alabama public schools, but eventually he was declared 100% disabled by the Social Security Administration based on his previous injuries and based on his having, among other medical issues, post-traumatic stress disorder, anger issues, obstructive sleep apnea, a seizure disorder, and anxiety.

The parties moved to Gulf Shores from Prattville in 2020 and purchased the marital residence. The wife filed a complaint for a divorce

in June 2022, although she admitted that she had known five years before that that the parties would probably divorce.[1] The husband filed an answer denying the material allegations of the complaint and a counterclaim for a divorce. The wife filed a reply denying the material allegations of the husband's counterclaim.

After ore tenus proceedings in July and September 2023, the trial court entered a judgment on September 6, 2023, divorcing the parties on

---

[1]Approximately five years before the wife filed her complaint for a divorce, the wife discovered that the husband "like[d] to talk to other women online. He'll find someone and befriend them online and then enter an inappropriate relationship. They'll have phone sex or even video each other." The wife stated that she had obtained that information from the husband's cellular telephone. She also testified that he had met some women in person. However, she stated that she did not know if he had met any women "recently. Honestly, I kind of avoided looking just because I don't … want to know," she said. She also stated that she had no proof that he had had sexual intercourse with any woman other than her during the marriage.

The husband denied that he had had a sexual relationship with anyone but the wife, but he admitted that he had had "text message exchanges" with other women. According to him, he had stopped that after the wife mentioned it to him, but he later testified that he had stopped texting other women when the parties moved to Gulf Shores. The husband also admitted that the wife had caught him when he went to Texas in 2015 or 2016 to meet with a woman that he had met online.

the ground of incompatibility of temperament. The divorce judgment divided the marital property and debts, awarded the wife $500 per month for 60 months as rehabilitative alimony, awarded the wife sole physical custody of the children, and awarded the parties joint legal custody of the children. The divorce judgment also awarded the husband standard visitation with the children and required him to pay the wife child support in the amount of $1,549 per month, less an "offset" of $1,000 per month for payments made to the children relating to the husband's Social Security disability benefits. In other words, regarding child support, the husband was to pay the wife $549 per month, and she was to receive $1,000 per month from the Social Security Administration on behalf of the children. The divorce judgment denied all other requested relief.

The husband timely filed a postjudgment motion to which he attached a statement, purportedly from the parties' oldest child, regarding the award of sole physical custody to the wife and an affidavit from the husband that included evidence that was not submitted at trial. The wife filed a motion to strike the husband's postjudgment motion based on the husband's submission of his affidavit and the purported

statement from the oldest child in support of that motion. On October 31, 2023, the trial court entered an order granting the wife's motion to strike the husband's posttrial evidentiary submissions and denying the husband's postjudgment motion.[2] On December 11, 2023, the husband filed a notice of appeal to this court.

On appeal, questions of law and the trial court's application of the law to the facts are subject to de novo review. Holly v. Huntsville Hosp., 925 So. 2d 160, 162 (Ala. 2005). As to questions of fact,

> "'[w]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Philpot v. State, 843 So. 2d 122, 125 (Ala. 2002). '"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So. 2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So. 2d 77, 79 (Ala. 1985))."

---

[2]The October 2023 order states both that the trial court was granting the wife's motion to strike the husband's postjudgment motion and denying that postjudgment motion. Rather than concluding that those statements are in conflict, we interpret the October 2023 order as striking the husband's posttrial evidentiary submissions but otherwise considering and rejecting the arguments made in his postjudgment motion. That interpretation is consistent with the trial court's statements during the hearing on the husband's postjudgment motion.

Fadalla v. Fadalla, 929 So. 2d 429, 433 (Ala. 2005).  Moreover,

> "an appellate court reviewing a circuit court's judgment in a divorce action is not to substitute its judgment of the facts for that of the circuit court. ... Instead, the appellate court is 'simply to determine if there was sufficient evidence before the circuit court to support its decision against a charge of arbitrariness and abuse of discretion.' [Ex parte Smith, 673 So. 2d 420, 422 (Ala. 1995)]."

Ex parte Elliott, 782 So. 2d 308, 311 (Ala. 2000).

> "[I]t is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented.  Blackman v. Gray Rider Truck Lines, Inc., 716 So. 2d 698, 700 (Ala. Civ. App. 1998).  The role of the appellate court is not to reweigh the evidence ...."

Ex parte Hayes, 70 So. 3d 1211, 1215 (Ala. 2011); see also, e.g., Pate v. Pate, 849 So. 2d 972, 976 (Ala. Civ. App. 2002) (noting "the trial court's unique position of being able to observe the witnesses and evaluate their demeanor and credibility").  "'It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'"  Ex parte Patronas, 693 So. 2d 473, 475 (Ala. 1997) (quoting Ex parte Bryowsky, 676 So. 2d 1322,

1324 (Ala. 1996)). Further, "'we are required to review the evidence in a light most favorable to the prevailing part[y].'" Architectura, Inc. v. Miller, 769 So. 2d 330, 332 (Ala. Civ. App. 2000) (quoting Driver v. Hice, 618 So. 2d 129, 131 (Ala. Civ. App. 1993)).

The husband argues that the trial court erred by awarding the wife sole physical custody of the children. In support of that argument, he cites one case -- Fitzhugh v. Fitzhugh, 634 So. 2d 565 (Ala. Civ. App. 1994) -- for the general principle that the pertinent "standard for review" is the best interest of the child and another case -- Ex parte Couch, 521 So. 2d 987 (Ala. 1988) -- for the principle that the parties are on "equal ground to gain 'full' custody." He then states that the evidence "was weighted" in his favor, and includes (1) a one-paragraph discussion regarding the testimony from Russell Polhemus, who the husband knew through a class that they taught together at church and who testified that the husband was very involved in the children's lives and activities and was very helpful in working with the parties' child who has Asperger's Syndrome and (2) a one-sentence statement indicating that

his schedule would allow him to be more available to the children than would the wife's schedule.

The husband's argument regarding the award of sole physical custody of the children to the wife is inadequately made, particularly in light of the totality of the evidence presented as to custody. See Rule 28(a)(10), Ala. R. Civ. P.; Dykes v. Lane Trucking, Inc., 652 So. 2d 248, 251 (Ala. 1994) ("We have unequivocally stated that it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."); see also White Sands Grp., L.L.C. v. PRS II, LLC, 998 So. 2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived."). This court does not reweigh the evidence regarding a child-custody award. See, e.g., Russell v. Self, 334 So. 3d 229, 231 (Ala. Civ. App. 2021) ("As an appellate court, we are not permitted to reweigh the evidence or to substitute our judgment for that of the trial court."). Even if we were to consider the

merits of the husband's argument, that argument is due to be rejected because the evidence was in conflict and the custody award to the wife was supported by evidence indicating that that award was in the children's best interests, including evidence indicating that the wife had been the day-to-day caregiver during the course of the children's lives, even after the husband had started staying home every day, and that she provided a more structured environment for the children than the husband, which, according to the wife, they needed. Further, the husband admitted that he had been diagnosed with a history of aggressive behavior and psychosis and that a person with such behaviors should not be raising children. Although the husband stated that he disagreed with those diagnoses, they were nevertheless part of the grounds for his disability determination. Based on the foregoing, the divorce judgment is affirmed as to the award of sole physical custody to the wife.

The husband also challenges the equity of the division of the marital property by making several arguments about the disposition of the marital residence and a $15,000 judicial lien that he was awarded.

Property division is a matter within the sound discretion of the trial court. See, e.g., Whaley v. Whaley, 261 So. 3d 386, 392 (Ala. Civ. App. 2017). As this court has stated, "[a]fter determining the property within the marital estate, a trial court must ascertain the value of that property, equitably divide the property, and implement a fair method for distributing the property." McCarron v. McCarron, 168 So. 3d 68, 75 (Ala. Civ. App. 2014); see also Ala. Code 1975, § 30-2-51 (addressing the division of marital property); Ala. Code 1975, § 30-2-57 (addressing alimony). "A court has no fixed standard to follow in ... dividing marital property. Rather, the ... division need only be equitable and be supported by the particular facts of the case." Ex parte Elliott, 782 So. 2d 308, 311 (Ala. 2000).

> "In making an equitable division of property, a trial court should consider not only the length of the parties' marriage and the source of the parties' property, but also the parties' respective ages, health, station in life, contribution to the marriage, and future prospects. In addition, the trial court should consider the value and type of property owned, the standard of living to which the parties have become accustomed during the marriage, and the parties' potential for maintaining that standard of living after the divorce."

Antepenko v. Antepenko, 549 So. 2d 1357, 1359 (Ala. Civ. App. 1989); see

also Ex parte Elliott, 782 So. 2d at 311-12 (stating that the appellate

court is not to substitute its judgment for that of the trial court).

> " '[T]he trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or where, as here, the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So. 2d 358 (Ala. 2000); Myrick v. Myrick, 714 So. 2d 311 (Ala. Civ. App. 1998). ...'
>
> "Baggett v. Baggett, 855 So. 2d 556, 559-60 (Ala. Civ. App. 2003). In addition ..., the trial court may also consider the spouses' relative economic and noneconomic contributions to the marriage in dividing the marital property and awarding periodic alimony. Weeks v. Weeks, 27 So. 3d 526, 532-33 (Ala. Civ. App. 2008)."

E.A.B. v. D.G.W., 127 So. 3d 422, 431 (Ala. Civ. App. 2012). "The weight

or importance assigned to any one of these factors is primarily left to the

trial court's discretion when apportioning property. This discretion will

not be disturbed on appeal unless found to be plainly and palpably

wrong." Antepenko, 549 So. 2d at 1359. "A property division that favors

one party over another does not necessarily indicate an abuse of

discretion by the trial court." <u>Fell v. Fell</u>, 869 So. 2d 486, 496 (Ala. Civ. App. 2003).

It was undisputed that the husband had been the primary source of income during the marriage. At the time of trial, the wife was approximately 41 years old and was working for a printing company. She earned approximately $560 per week, which, she said, she had used to pay expenses for the children. She had not worked outside the home for most of the marriage, except for an occasional "odd job." According to her, the husband had not wanted her to work outside the home, and she had been raising the children. The husband also admitted that there were times that he had not wanted the wife to work outside the home because she would be around other men. However, the wife began working outside the home after the husband "was put on disability," several years before trial.

The wife testified that, when the husband had been stationed in South Carolina, she had attended school for massage therapy and had obtained a South Carolina license, but, she said, she had never practiced massage therapy because the husband would not let her. She also stated

12

that that license could not be transferred to Alabama, and, because it had been such a long time since she had been licensed, she would have to attend school and "finish the entire section again" to obtain a license in Alabama. According to the husband, the wife also had an Alabama license to sell insurance, and it was undisputed that she had worked for a few insurance agencies in the few years preceding trial, although it did not appear that her income in those positions had exceeded the income she was earning at the printing company.

The wife testified regarding an exhibit that was admitted into evidence and that described the monthly living expenses for her and the children. Those expenses totaled $5,055, including a $1,900 rent payment for an apartment in Gulf Shores, assuming she was not awarded the marital residence. Based on her testimony, that rent amount was a reasonable amount for an appropriate apartment for her and the children.

At the time of trial, the husband was approximately 40 years old. He had a bachelor's degree and a master's degree, and he had taught mathematics in the Alabama public-school system after he had retired

13

from the military but before he became 100% disabled. He admitted that his last school employment had been terminated after he had been accused of hitting a student with a ruler, although he denied that accusation. At the time of trial, the husband had gross income of over $7,000 per month, not including approximately $1,000 per month that he received from the Social Security Administration for the children, which, as noted above, would be paid directly to the wife pursuant to the divorce judgment. The husband's income included disability benefits from the United States Department of Veterans Affairs ("VA") of approximately $4,071 per month, military retirement pay of approximately $210 per month, combat-related special compensation of approximately $1,050 per month, and Social Security disability benefits of approximately $1,871 per month, He admitted that he gambled and that he had lost over $15,000 at casinos in the two years before the wife had filed the complaint for a divorce. He also admitted that his gambling had resulted in the parties' bank account being overdrawn before they had moved to Gulf Shores in October 2020. According to him, he had "backed off" his gambling since the wife had filed her complaint for a divorce. He stated

that "[t]he gambling, you know, it's tapering recently, but the bad -- the heavy part of it" happened five years before trial. He also admitted that he had lost "a lot of money" in online investing in the stock market. Based on the evidence presented by the husband regarding his living expenses and by the wife regarding the cost of renting a house in Gulf Shores, the husband's income would be adequate to pay his living expenses and the rehabilitative alimony and child-support awards in the divorce judgment.

Except as hereinafter discussed, no valuation information regarding the marital property and debts was stated in the divorce judgment or was the subject of any evidence presented at trial. The divorce judgment awarded the wife a 2017 Ford Explorer automobile, which the husband testified was worth $35,000 and which had no associated debt; any bank account in her name; one-half of the balance in the parties' USAA bank account as of September 5, 2023; the marital residence, which had either no equity or a relatively small amount of equity, see discussion infra; and her retirement accounts, pensions, and investment accounts, if any. The wife was responsible for any debts on the property that was awarded to her and any debts in her name, which

15

essentially meant that she was responsible for the mortgage on the marital residence.

The divorce judgment awarded the husband a 2012 Toyota Tundra pickup truck, which he testified was worth $12,500 and had no associated debt; a 2017 Ford Focus automobile driven by the oldest child, which the husband testified was worth $15,000 and had no associated debt; any bank account in his name; one-half of the balance in the parties' USAA bank account as of September 5, 2023; his retirement accounts, pensions, and investment accounts, if any; and, "[i]n exchange for any potential equity in [the marital residence,] … a judicial lien in the amount of $15,000 against the [marital residence] should [the wife] ever elect to sell the home and property."  A footnote in the divorce judgment stated that it was the trial court's intent

> "to allow [the husband] to receive the first $15,000 [in] net proceeds from the sale of the marital [residence] IF [the wife] should ever elect to sell [the marital residence].  The 'lien' is not to be filed in the Probate Office so as to cloud the title to [the marital residence]."

(Capitalization in original.)  The husband was responsible for any debts on the property awarded to him and any debts in his name.

In light of the wife's income at the time of trial, she required approximately $3,025 in additional income to satisfy her living expenses. Even with the rehabilitative-alimony award of $500 per month and the child-support payments of $1,549 per month (including the Social Security payments for the children), the wife needed almost an additional $1,000 per month to satisfy her and the children's living expenses. But the trial court concluded that the wife could earn additional income. See discussion, infra.

Regarding the marital residence, the parties purchased that residence in October 2020 for $298,000, using proceeds from a VA mortgage loan. In February 2022, the martial residence had a fair market value of approximately $400,000, and the parties refinanced the initial loan with the proceeds from another VA mortgage loan in the amount of $360,000 ("the VA loan"). The monthly payment amount on the VA loan was $1,916.[3] The proceeds from the VA loan also were used to pay off marital debts, including automobile debt and credit-card debt.

---

[3]When testifying regarding why he believed he should have sole physical custody of the children and be awarded the marital residence,

The husband testified that, "with the recent downturn in the economy, the last [county-tax] appraisal of the [marital residence] was $360,000," which was his opinion of the fair-market value of the residence at the time of trial based, according to him, on the recent sale of a similar house near the marital residence. The wife testified that she did not know what the value of the marital residence was,[4] and she desired for

_____

the husband testified that, if the wife was awarded the marital residence, she "would have to refinance at a higher rate and pay property taxes on it which I don't have to pay right now, and the mortgage would be about $2,500 a month after that." However, the husband presented no documentary evidence in support of that testimony. Likewise, he presented no legal authority regarding those matters in the trial court, and he has included no such authority in his appellate brief.

[4]The following colloquy occurred on the wife's counsel's direct-examination of the wife:

"Q: What is the approximate fair market value of [the marital residence] in your opinion?

"A: To be honest with you, I'm not sure what the market is now. We had it assessed when we refinanced last year.

"Q: Do you remember that?

"A: I believe it was 420, but I don't know because I never actually saw the document."

18

the marital residence to be sold and the equity divided between the parties. However, according to the husband, the payoff on the VA loan was $349,947.82 at the time of trial, and, according to the husband, a sale of the marital residence, net of expenses of sale, would result in no equity for distribution. The husband stated that he did not want to refinance the VA loan if the marital residence was awarded to him and that he did not want to sell the marital residence. He also stated that he did not want the children to have to move from the marital residence and that the VA loan required him to reside in the marital residence. When questioned about why he thought that he should have custody of the children, the husband responded:

> "Honestly I think, you know, I should be allowed to keep [the marital residence] because selling it would cost money. And for that reason, the kids should be allowed to stay with me so that they can go to Gulf Shores [schools]. And as [the wife] attested to in her testimony, she can't afford Gulf Shores on her salary. So she can live in Foley or somewhere a little bit cheaper, but still close by. And I have no problem as far as visitation or them wanting to go see her whenever. I don't have any issues with that, you know, unlimited. But as far as having them for Gulf Shores city schools, that would be why."

19

Also, the cross-examination colloquy between the husband and the wife's counsel included the following:

> "Q: Tell us why you don't think that [the wife] should get [the marital residence] and [the children] live with her in [the marital residence]?
>
> "A: If I leave [the marital residence], it is no longer a VA loan so she would have to refinance at a higher rate and pay property taxes on it which I don't have to pay right now, and the mortgage would be about $2,500 a month after that.
>
> "Q: Well, if you're paying her child support and alimony plus the money she's making, you don't think she could afford that?
>
> "A: It would make more sense for me to keep [the marital residence].
>
> "Q: Let me make sure I understand what you're saying …. You're saying that you should get custody of the [children] because it makes more sense for you to keep [the marital residence], correct?
>
> "A: I'm saying that their residence of record should be at [the marital residence] for school purposes."

At the close of trial, the trial court stated that it was limited in making an alimony award to the wife because of the sources of the husband's income. See Nelms v. Nelms, 99 So. 3d 1228, 1230 (Ala. Civ. App. 2012) (discussing the issue of alimony in relation to VA disability

20

benefits associated with retirement). The trial court then stated that the marital residence was a concern because, although normally he would order it sold and the equity divided, the high amount of debt on that residence and market conditions made it likely that there would be no equity to divide between the parties upon any sale. The trial court further stated that it was awarding sole physical custody of the children to the wife and that the husband's concern for the children's schooling was valid. The trial court then explained the decision it proposed to make regarding the marital residence as follows:

> "I'm going to award [the marital residence] to [the wife]. She'll be responsible for payment of the mortgage. I'll give [the husband] a lien against the house in the amount of $15,000. So if at some point the house is sold, he'll have to get paid that $15,000, but that will be at her -- it's not something he can sue to foreclose upon. It's not a judgment. It's simply a lien against the property for $15,000 that would be … second to the home mortgage. Because that puts her almost at $5,500 per month [in living expenses]. That's not a lot. So it's going to be tight, but I think that there's some of the evidence is that she could make more money than she's making. So I don't think I'm putting her in an untenable position. …

The posttrial colloquy continued:

> "[The trial court]: … She can assume the loan. She can -- he has to cooperate with her in assuming the loan, and she can

assume the loan as a VA loan.  She can assume the VA loan. She's got the ability to do that if she qualifies.

"[The wife's counsel]:  Which could be a real problem --

"[The trial court]:  Could be.

"[The wife's counsel]:  -- but we can cross that bridge when we get to it.

"[The trial court]:  In other words, it doesn't accelerate the loan just because she's there.[5]

"[The husband's counsel]:  Our concern is, Judge, we can only have one VA loan at a time --

"[The trial court]:  That's right.

"[The husband's counsel]:  So we can't go buy a house.  We can't do anything.

"[The trial court]:  He can qualify for something else.

"[The husband's counsel]:  Well, what we would ask is for her, because she's not VA --

---

[5]See 38 C.F.R. § 36.4508(a)(2)(i)(G) (stating that acceleration of a VA loan "may not be exercised if the transfer is the result of … [a] transfer resulting from a decree of a dissolution of marriage … by which the spouse of the borrower becomes the sole owner of the property" and that, "[i]n such a case[,] the borrower shall have the option of applying directly to the Department of Veterans Affairs regional office of jurisdiction for a release of liability under 1813(a)").

"[The trial court]: I'm not going to make her do that. If she can assume it, she can assume it. But I'm not going to require her to refinance [the marital residence]. … I will require her to assume it if she's capable of assuming it to get it out of his -- to take it off of him but at a reasonable -- she must assume the loan when it's possible for her to do so.

"[The husband's counsel]: How long a period of time are we talking about?

"[The trial court]: Whenever she's eligible to assume it. You have to talk to the VA about that."[6]

The divorce judgment does not contain a provision requiring the wife to attempt to assume the VA loan at any time, nor does it establish any time frame for the wife's paying the husband for his $15,000 judicial lien.

We see no need for a point-by-point discussion of the husband's arguments, some of which are without merit or without supporting legal

---

[6]It appears that the wife was a co-borrower on the VA loan and the discussion of her "assumption" of the VA loan related to having the husband released from liability on that loan. See 38 U.S.C. § 3714 (discussing the terms for releasing a veteran from liability on a VA loan, which terms include credit qualification of the party obligated on the loan). We note that the parties provided no discussion of specific legal authority governing the VA loan either at trial or in their appellate briefs.

23

authority.[7]  Although we cannot conclude that the trial court erred by awarding the marital residence to the wife, we agree with the husband that it was inequitable to not require her to attempt to assume the VA loan within a reasonable time so as to relieve the husband of liability

_____

[7]For example, the husband contends that the award of the marital residence to the wife was inequitable because, he says, he cannot purchase or finance a home while he remains obligated on the VA loan. No evidence was presented that would support that conclusion, however, and, more importantly, the trial court correctly noted that, as between the husband and the wife at the time of trial, the husband was the more likely party to qualify for some type of additional financing based on the parties' respective incomes.  Even accepting the possibility that the husband could not qualify for a mortgage on a residence while he was liable on the VA loan, that would simply mean that at least one of the parties would need to rent housing regardless of who received the marital residence.  As between the parties, the trial court's decision that that party should be the husband, particularly in light of the parties' desire for the children to remain in the Gulf Shores school system, the parties' relative incomes and sources of income, and the decision that the wife was to have sole physical custody of the children, was not inequitable.

Likewise, the husband has cited no authority relevant to the issue whether his VA loan-benefit amount of $360,000 can be considered as a property award to the wife.  See Rule 28(a)(10), Ala. R. App. P.; Dykes, supra; White Sands Grp., supra.  At least one court has rejected the argument that a VA loan-benefit amount should be considered as a property award for purposes of reviewing the equity of the marital-property division.  See Jones v. Jones, 121 N.C. App. 523, 525, 466 S.E.2d 342, 343 (1996).  However, we do not reach and address that issue.

thereon, such as within a reasonable time after the termination of the husband's rehabilitative-alimony obligation, when she should be self-supporting. Likewise, until the husband is released from liability on the VA loan, there must be some provision requiring the wife to indemnify the husband from loss and to sell the marital residence should it become necessary for him to make mortgage payments on the VA loan because of the wife's default thereon, particularly since such issues cannot be addressed through a modification proceeding. See Barnes v. Barnes, 28 So. 3d 800, 803 (Ala. Civ. App. 2009) ("[O]rdering the former husband to refinance the mortgages on the former marital residence constitutes an impermissible modification to the property-division provisions of the amended divorce judgment.").

We also agree with the husband's argument that the provisions regarding the $15,000 judicial lien have made that award illusory and thus inequitable. In that regard, the evidence would support a conclusion that there was no net equity in the marital residence, and the trial court's determination that it would award the husband a $15,000 judicial lien in exchange for "any potential equity in [the marital residence]" is less than

clear regarding whether the trial court actually concluded that such equity existed at the time of trial. Assuming that the trial court did make that determination, however, requiring the payment of that lien only "IF" the wife decided to sell the marital residence, which might never occur, and prohibiting the husband from recording his lien, which would protect the award from future diminution by creditors of the wife, were not "a fair method for distributing the property." McCarron, 168 So. 3d at 75. At a minimum, some provision should have been included in the divorce judgment requiring the payment of the lien amount within a reasonable time after the termination of the husband's rehabilitative-alimony obligation, again, when the wife should be self-supporting, and the husband should have been allowed to treat the award as a judgment for purposes of recording the lien and protecting his interest therein.

We wish to be clear that the above discussion is not an attempt to address every pertinent contingency and is not intended to limit the discretion of the trial court on remand regarding its reconsideration of the division of the marital property and the rehabilitative-alimony award. But a judicial lien of the nature that the trial court intended

26

resembles a judgment or an award of alimony in gross. See Brown v. Brown, 719 So. 2d 228, 229 (Ala. Civ. App. 1998) (affirming a judgment that "awarded the husband the marital home and granted the wife a $10,000 judgment lien on the home 'representing her interest in the marital property'"); see also Kean v. Kean, 189 So. 3d 61, 64 n.2 (Ala. Civ. App. 2015) ("A trial court may order alimony in gross in order to effect an equitable property division, especially when liquidation of marital assets is not practicable."); Lambert v. Lambert, 22 So. 3d 480, 485 (Ala. Civ. App. 2008) ("'An alimony-in-gross award "must satisfy two requirements, (1) the time of payment and the amount must be certain, and (2) the right to alimony must be vested." It must also be payable out of the present estate of the paying spouse as it exists at the time of the divorce.'" (quoting TenEyck v. TenEyck, 885 So. 2d 146, 151-52 (Ala. Civ. App. 2003), quoting in turn, Cheek v. Cheek, 500 So. 2d 17, 18 (Ala. Civ. App. 1986)). Accordingly, some provision must be made such that the lien amount will be paid to the husband within a reasonable time and allowing the husband to protect his interest in that award. Further, our discussion of using the termination of the rehabilitative-alimony

obligation as a trigger for such a payment should not be taken as requiring that particular trigger, although it would have the benefit of addressing what should occur if the wife dies prematurely or remarries. We are simply requiring the trial court to exercise its discretion such that the husband may realize the benefit of any property award within a reasonable time and addressing pertinent contingencies that might affect the husband's interests in whatever award the trial court might make to him relating to equity in the marital residence, if any.

Based on the foregoing, we affirm the divorce judgment as to the award of sole physical custody of the children to the wife. We reverse the divorce judgment as to the division of the marital property and the award of rehabilitative alimony to the wife, and we remand the case for the trial court to enter a new judgment regarding the division of marital property and alimony. See A.M. v. M.G.M., 315 So. 3d 584, 597-98 (Ala. Civ. App. 2020) ("'[B]ecause property-division and alimony awards are considered to be interrelated, we often reverse both aspects of the trial court's judgment so that it may consider the entire award again upon remand.' Redden v. Redden, 44 So. 3d 508, 513 (Ala. Civ. App. 2009)."). The trial

court is also instructed to make the express findings required by Ala. Code 1975, § 30-2-57, regarding any alimony award it may enter on remand.  See Merrick v. Merrick, 352 So. 3d 770, 775 (Ala. Civ. App. 2021).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, Fridy, and Lewis, JJ., concur.